**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREN J.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.   24-cv-2139** |
| | : | |
| **COMMISSIONER OF SOCIAL SECURITY,** | : | |
| **Defendant.** | : | |

<u>**MEMORANDUM OPINION**</u>

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                    **January 24, 2025**

Plaintiff Karen J. brought this action seeking review of the Commissioner of Social Security Administration's (SSA) decision denying her claim for Social Security Disability Insurance (SSDI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 403-433.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 6) is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum.

# I.    PROCEDURAL HISTORY

On March 15, 2022, Plaintiff protectively filed for SSDI, alleging disability since September 15, 2020, due to bilateral cubital tunnel, anxiety, depression, pain in right hand and hip, lumbar radiculopathy, severe arthritis, lumbar bulging discs, loss of dexterity and weakness, hand numbness, and inability to sit, stand, and walk for long periods.  (R. 18, 213-14, 244).  Plaintiff's application was denied at the initial level and upon reconsideration, and she requested a hearing before an Administrative Law Judge (ALJ).  (R. 91-111, 128-29).  Plaintiff, represented by counsel, and a vocational expert (VE) testified at the April 18, 2023

administrative hearing.  (R. 48-72).  On April 28, 2023, the ALJ issued a decision unfavorable to Plaintiff.  (R. 15-37).  Plaintiff appealed the ALJ's decision, but the Appeals Council denied Plaintiff's request for review on March 26, 2024, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  (R. 1-6).

On May 20, 2024, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania.  (Compl., ECF No. 1).  On May 23, 2024, she consented to my jurisdiction pursuant to 28 U.S.C. § 636(C).  (Consent, ECF No. 4).  On August 26, 2024, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review, and on September 20, 2024, the Commissioner filed a response.  (Pl.'s Br., ECF No. 6; Resp., ECF No. 7).  Plaintiff filed a reply on October 3, 2024.  (Reply, ECF No. 8).

## II.    FACTUAL BACKGROUND[1]

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on December 22, 1958, and was 61 years old on the alleged disability onset date.  (R. 240).  She has a college degree and previously worked as an administrative assistant, a Covid-19 contact tracer and an out-patient registrar.  (R. 55, 245-46).

### A.    Medical Evidence

On September 15, 2020, Plaintiff had an appointment with her family physician, Jennifer Keah, M.D., at which she complained that sitting at her new sedentary work job was aggravating her recurrent hip pain, as well as her foot pain stemming from a fall that broke her toe.  (R. 567).

---

[1]  Because the Court decides this matter based solely on an issue relating to Plaintiff's physical impairments, it does not summarize the evidence concerning her mental ones.

At a follow up visit two weeks later, her back pain was slightly improved after getting a new bed, but she related that her podiatrist wanted her to begin physical therapy because her abnormal gait was affecting her hip.  (R. 570).  At an October 26, 2020 visit, she reported having fallen three times since August and expressed concern about getting out of the bathtub.  (R. 572).  She added that she must take a break after walking up two stories of her three-story home.  (*Id.*).

On March 4, 2021, Plaintiff presented to Kate Temme, M.D., for evaluation of right groin pain following a referral from Dr. Keah.  (R. 437).  It was noted that some days her pain was limited and that she could perform her hip exercises well.  (*Id.*).  Additional notes indicate that she had been counseled on a total hip replacement, but she deemed her pain insufficiently significant to warrant one.  (R. 438).  A few days later, at a visit with Daniel Selassie, M.D., Plaintiff reported pain interfering with her ability to sit still or sleep, for which the doctor prescribed oxycodone.  (R. 576).  On March 15, 2021, Plaintiff underwent an x-ray of her lumbar spine.  (R. 352).  It showed endplate sclerosis, hypertrophic spurring, and generally moderate disc space narrowing advanced at L5, although "likely old" and without loss of stature.  (*Id.*).  At a return visit with Dr. Temme on April 6, 2021, a physical examination showed a normal gait and full lumbar range of motions but a mild decrease in range of motion in the right hip and pain with back extension and rotation to the left.  (R. 434). An MRI of the lumbar spine on April 19, 2021, revealed broad-based disc bulges and foraminal narrowing at most levels and a small annular tear in the posterior aspect of L4-L5.  (R. 354).  On May 6, 2021, Plaintiff reported to Dr. Tingan that her pain was primarily in her lower leg and that she believed physical therapy had not helped much.  (R. 581).  She stated that ibuprofen helped but that she had been advised to stop taking it.  (*Id.*).  She returned to Dr. Tingan on June 2, 2021, explaining that "[t]he last 5 days ha[d] been bad" and that she had not been sleeping well during that time.  (R. 584).  She

demonstrated an abnormal gait, as she had at the prior appointment. (R. 582, 584).

During monthly visits with Dr. Tingan from July to October 2021 Plaintiff continued to complain about back pain radiating down the right leg with attendant numbness, tingling and weakness, exacerbated by movement. (R. 413-29). However, she ambulated normally, a straight leg raise (SLR) test was negative, and she showed no pain with her lumbar range of motion. (R. 426-28). In December 2021, Plaintiff reported that her low back pain had improved while her right hip pain had worsened. (R. 409). She was taking ibuprofen again, which had reduced her pain from severe to moderate, although she continued to have trouble putting weight on her hip for the first hour after inactivity. (R. 588). A musculoskeletal examination showed an abnormal gait, tenderness and decreased range of motion in the lumbar back and right hip, and decreased strength in the right hip. (R. 589). Right hip x-rays from this time confirmed a "severely narrowed" hip joint. (R. 407). By the January 2022 visit, Plaintiff's pain had improved in her back and hip. (R. 406-07).

In addition to these visits, Plaintiff received treatment at the Philadelphia Hand to Shoulder Center throughout 2021 and most of 2022. (R. 818-56). She reported multiple falls that had exacerbated her right elbow pain, although this had been improved with prednisone and an elbow brace. (R. 829). An x-ray showed cortical thickening of the lateral epicondyle, and she was referred to physical therapy and prescribed a neoprene brace. (R. 830). By October 2022, physical therapy and Motrin had improved her range of motion and her elbow pain had mostly resolved. (R. 822; *see also* R. 827).

Plaintiff also attended Kinetic Physical Therapy in Downingtown, Pennsylvania, starting April 5, 2021, for treatment of lower back pain and right-sided radiculopathy. (R. 370). During this period, physical examinations showed tenderness in her right lumbosacral spine, decreased

strength in her hips and right knee, and decreased range of motion in her lumbar spine, hips, and knees.  (R. 317-18, 330, 371-72).  She attended approximately 20 visits before terminating therapy on October 1, 2021, because her health insurance was ending.  (R. 301).

Plaintiff was enrolled in a physical therapy program at Penn Medicine in West Chester, Pennsylvania, between December 14, 2021, and January 14, 2022.  (R. 379-98).  It was noted upon intake that her hip rather than lumbar spine presented her with her greatest impairments.  (R. 394).  During this time, Plaintiff expressed doubt about her treatment but was counseled on the importance of mobility and how therapy could improve her strength and endurance.  (R. 382).  Nonetheless, she "did not display proper understanding of [the] need for skilled care" and failed to appear at or otherwise canceled four appointments.  (R. 385).

On March 9, 2022 Dr. Keah completed a Physical Medical Opinion for Plaintiff.  (R. 690-94).  She assessed Plaintiff's prognosis as fair and noted that Plaintiff suffered from hand pain, loss of dexterity, weakness, pain in the right hip and groin, trouble walking and standing, and leg numbness.  (R. 690).  She added that Plaintiff's pain was daily, achy and burning, rated as a seven on a one-to-ten scale in her hands and an eight in her right hip and groin, and triggered by normal activity.  (*Id.*).  Significant laboratory findings included an April 2021 MRI of the lumbar spine confirming multilevel degenerative changes and disc bulges, as well as a hip x-ray showing severe degenerative changes.  (*Id.*).  She opined that Plaintiff could walk one city block, that she must walk every 15 minutes for three minutes, that she could sit or stand for 20 minutes at a time, and that in an eight-hour workday she could sit for four hours and stand/walk for two.  (R. 691).  Dr. Keah further noted that Plaintiff must elevate her legs to hip height half the workday due to pain and pressure, use a cane due to lack of balance, and take hourly unscheduled five-minute breaks due to muscle weakness, chronic fatigue, pain/paresthesia and

numbness, and the adverse effects of her medication.  (R. 691-92).  She also recorded that Plaintiff could lift and carry 10 pounds rarely and occasionally less than that, rarely twist or stoop, occasionally crouch/squat, and frequently climb stairs but never ladders.  (R. 692).  Dr. Keah observed that Plaintiff could use her hands and fingers 25 percent of the workday and reach in all directions 10 percent of the workday.  (R. 692).  She predicted that Plaintiff would be off-task 20 percent of the time and miss work more than four days per month and that her impairments would last more than 12 months.  (R. 690-93).  She cited as the bases for her opinion her experience with Plaintiff over time, Plaintiff's complaints (including their consistency over time with laboratory findings), her response to treatment, and reports from other medical care providers.  (R. 693).

On March 25, 2022, Dr. Tingan also completed a Physical Medical Opinion for Plaintiff. (R. 695-700).  Citing the same imaging findings as Dr. Keah plus a lumbar spine x-ray, she identified Plaintiff's key symptoms as lower back and right groin pain.  (R. 695).  He opined that Plaintiff could walk up to two city blocks, that she must walk every 60 minutes for 15 minutes, that she could sit for one hour or stand for 20 minutes at a time, and that in an eight-hour workday she could sit or stand/walk for less than two hours each.  (R. 696).  He further noted that Plaintiff must use a cane due to pain and lack of balance and take half-hourly unscheduled five-minute breaks due to muscle weakness and pain/paresthesia and numbness.  (R. 696-97). Dr. Tingan further recorded that Plaintiff could rarely lift and carry 20 pounds or engage in any postural movements but that she had no manipulative or reaching limitations.  (R. 697).  He predicted that Plaintiff would be off-task at least 25 percent of the time and miss work more than four days per month and that her impairments would last more than 12 months.  (R. 695-98).  As the reasons for his opinion, he referenced his longitudinal experience with Plaintiff, the

consistency of Plaintiff's complaints over time, and her response to treatment.  (R. 698).

On May 18, 2022, medical consultative examiner Patrick Frisella, D.O., conducted an Internal Medicine Examination of Plaintiff.  (R. 701-21).  Plaintiff complained of bilateral cubital tunnel syndrome causing moderate pain with use of her elbows and hands, numbness and tingling; right hip arthritis causing severe pain with weightbearing activity; lumbar radiculopathy, spondylosis and sciatica with constant, severe radiating pain from the right lower back down the right leg; and unrepaired bilateral torn meniscus causing moderate pain with weightbearing activity.  (R. 703).  She stated that she had undergone a left-sided cubital tunnel release, but she declined surgery on the right side.  (R. 702).  Her activities of daily living (ADLs) included driving, cooking, cleaning, doing laundry, shopping, personal care, watching television, listening to the radio, reading, online social media activities, and going to doctor visits.  (*Id.*).  Upon examination, Plaintiff was in no acute distress with a normal gait, squat, and stance and the ability to walk on heels and toes, albeit with mild difficulty.  (R. 704).  She did not use an assistive device.  (*Id.*).  Her musculoskeletal system and extremities were normal with full strength, and bilateral supine and seated SLR tests were negative, however, bilateral knee x-rays reflected degenerative spurring consistent with osteoarthritis.  (R. 707-08).  She also had intact hand and finger dexterity and full grip strength bilaterally and could tie laces and use zippers and buttons.  (*Id.*).  Plaintiff had full range of motion in all body parts.  (R. 709-12).  Dr. Frisella recorded her prognosis as fair.  (R. 706).

In the attached Medical Source Statement of Ability to Do Work-Related Activities (Physical), Dr. Frisella determined that Plaintiff could lift and carry up to 20 pounds continuously, up to 50 pounds frequently, and up to 100 pounds occasionally; sit, stand, and walk, respectively, for eight, six, and four hours at a time and for eight hours each throughout a

workday; frequently reach in all directions and continuously handle, finger, feel, push/pull and operate bilateral foot controls; occasionally climb ladders and scaffolds, frequently balance, and continuously perform all other postural activities; and occasionally tolerate unprotected heights but continuously tolerate all other environmental conditions. (R. 713-17). She further noted that Plaintiff could perform all activities listed on the form, including shop, travel alone, walk at a reasonable pace on an uneven surface or up stairs without a handrail, use public transportation, prepare simple meals and feed herself, care for her personal hygiene, and sort, handle, and use paper and files. (R. 718).

On June 29, 2022, State agency physician Karel Keiter, D.O., opined that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally, otherwise push and pull without limitation, sit or stand/walk for up to six hours per workday, frequently climb ramps and stairs, and occasionally balance, kneel, stoop, crouch, crawl, and climb ladders, ropes, and scaffolds. (R. 97-98). She added that Plaintiff had no environmental or manipulative limitations except that she should avoid concentrated exposure to hazards such as machinery and heights. (R. 98). Upon reconsideration, on October 6, 2022, State agency physician Josie Henderson, M.D., determined the same limitations except that Plaintiff could only lift and carry 10 pounds occasionally and less than 10 pounds frequently and sit for up to four hours per workday. (R. 108-09).

Additional knee x-rays from July 13, 2022 showed moderate degenerative changes in the medial and patellofemoral compartments. (R. 783). Two days later, Dr. Keah completed a Pain Questionnaire for Plaintiff in which she reported that Plaintiff suffers from severe pain in her knees bilaterally and right groin, hip, and lower extremities (radiating to her ankle) due to degenerative disc disease, bulging discs, an annular tear in her lumbar region and bilateral

osteoarthritis and meniscus tears in her knees, as confirmed by an x-ray and an MRI.  (R. 722).
She observed that Plaintiff's pain was exacerbated by spinal flexion/bending, walking or
standing more than 10 minutes, sitting, and driving.  (*Id.*).  She opined that Plaintiff must change
positions every 10 minutes, including lying down hourly.  (R. 722-23).  Dr. Keah predicted that
Plaintiff's pain would constantly interfere with her attention and concentration.  (R. 723).

On July 29, 2022, Jeffrey Vari, DPT, completed a Functional Capacity Evaluation (FCE)
for Plaintiff.  (R. 724-43).  He found that she could occasionally lift and carry five pounds, reach
vertically, bend, squat, sit, stand, walk, and use her hands for coupling; frequently reach
horizontally; and continuously use her hands bilaterally for simple tasks.  (R. 725).  He
calculated that these abilities would permit Plaintiff to perform 84.8% of her past relevant work
[PRW] as a secretary, although she would not be able to sit for the requisite amount of time or
occasionally lift and carry 10 pounds[2] as also required to carry out that position.  (R. 725, 727).
He added that his findings "were in accordance with [Plaintiff's] subjective reports and
presentation," which included level-three pain on a one-to-ten scale rising to level-six by the end
of physical testing.  (R. 725, 730).  Findings of note included "significant and consistent"
weight-shifting while sitting; substantial gait anomaly favoring the right side with loss of stride
on the left and stance and full extension on the right; tenderness along the right groin and
lateral/anterior knee; generally four-out-of-five strength levels in the upper and lower extremities
with further reduced strength in the right hip; and lumbar spine range of motion limited by 10 to
20 percent on flexion and by 60 to 70 percent on extension.  (R. 731).  Cardiovascular testing
was skipped due to Plaintiff's gait deviations, but grip testing was normal.  (R. 731-32).  During
a typing simulation, she was unable to continue past 13 minutes and required multiple breaks and

---

[2]  Testing revealed a "loss of load control" at 10 pounds.  (R. 735).

frequent position changes. (R. 736). She demonstrated an ability to sit and stand for one hour each and to walk for 30 minutes. (R. 737). Vari assessed Plaintiff's overall effort throughout testing as "reliable." (R. 739).

During the summer of 2022, Plaintiff complained to Dr. Keah of chronic pain, especially in her knees and right groin, hip, and leg. (R. 752, 758, 761). At a January 2023 visit, her chief problem was a lumbar bulging disc with moderate to severe foraminal stenosis causing severe pain in her right hip and L5 distribution. (R. 76-79, 875). Specifically, she experienced numbness, tingling and "unbearable" pain in her right groin, calf, and foot. (R. 78). An examination showed arthralgias, back pain and gait problems. (R. 875). She reported having received a right hip injection in November 2022, but it did not improve her symptoms. (*Id.*). However, she reported feeling much better after lying down the prior night on a firm air mattress for 18 hours. (*Id.*). On February 17, 2023, Dr. Sherif noted that x-rays showed severe multilevel degenerative changes from L2 to S1 including L5-S1 disc space collapse and bilateral neural foraminal stenosis and severe right L5 nerve root compression. (R. 860-61). He recommended that she restart physical therapy and see a hip specialist for a replacement before further treatment of her spine, but at an April 12, 2023 visit with Dr. Keah, Plaintiff indicated that she was not ready to return to physical therapy. (R. 82, 86, 861).

### B.    Non-Medical Evidence

In an Adult Function Report dated March 2, 2022, Plaintiff reported that she cannot sit, stand or walk for any length of time and that she has trouble performing routine household tasks such as cleaning and meal preparation. (R. 232-33). She indicated that due to pain she has difficulty sleeping, dressing, bathing and using the toilet and requires help with hair care. (R. 233). Her ADLs included simple meal preparation a few times per week, laundry, washing

dishes, decluttering, driving, and shopping online and in person.  (R. 234-35).  She claimed that she can walk for no more than five minutes before needing to rest for one hour to one day and that she requires crutches, a cane, a walker, and/or a brace or splint.  (R. 236-38).  She checked boxes indicating difficulties with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing and using her hands.  (R. 237).

Plaintiff completed a Pain Questionnaire on April 24, 2022, in which she reported daily pain primarily in her back, neck, shoulders, right hip and foot, and both knees and hands.  (R. 251-53).  She described the pain in her legs as burning, in her hip as "sharp-nerve/neuro-like aching," in her hands and arms as throbbing, in her back as radiating, and in her shoulders as both aching and throbbing.  (R. 251).  All pain was exacerbated by movement, and she could not use her hands and legs when pain levels increase.  (R. 251-52).

On September 13, 2022, Plaintiff completed a new Adult Function Report, which contains the following additional information.  (R. 266-73).  She explained that she requires a few hours in the morning before she is able to walk downstairs to eat breakfast and take her medication, which then enables her to walk for up to several hours.  (R. 266).  However, at other times she requires three to four days of bed rest.  (*Id.*).  She reported difficulty with most aspects of personal care other than feeding herself and needing help to complete most household chores.  (R. 267-68).  She added compression wraps and bandages to her list of necessary assistive devices.  (R. 272).

At the April 18, 2023 administrative hearing, Plaintiff testified to pain throughout her body but worst in her right leg, extending from her buttock to her calf and with severe pain in her groin.  (R. 60-61).  She complained that the pain causes difficulty with driving, cooking, showering, putting on shoes and walking and that she sometimes requires use of a cane.  (R. 62-

65).  She further described suffering from bilateral cubital tunnel syndrome causing difficulties using her hands due to swelling and stiffness.  (R. 64).  She stated that she can sit for 15 minutes at most before having to get up due to stabbing pain in her right lower extremity.  (R. 67).

## III.    ALJ'S DECISION

Following the most recent administrative hearing, the ALJ issued a decision in which he made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2025.

2.    The claimant has not engaged in substantial gainful activity since September 15, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following severe impairments: right elbow lateral epicondylitis; lumbar degenerative disc disease (DDD); lumbar radiculopathy; right sacroiliac (SI) joint dysfunction; hip arthritis; bilateral knee osteoarthritis (OA); and obesity (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: sitting for only two hours at a time before standing up to 10 minutes at the workstation and then returning to a seated position; never climbing ladders, ropes, or scaffolds; frequently climbing ramps and stairs; occasionally

balancing, stooping, and kneeling; never crouching or crawling; frequent bilateral

reaching; and must avoid concentrated exposure to dangerous moving machinery

and unprotected heights.

6.    The claimant can perform past relevant work as a school secretary.  This work

does not require the performance of work-related activities precluded by the

claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant has not been under a disability, as defined in the Social Security

Act, from September 15, 2020, through the date of this decision (20 CFR

404.1520(f)).

(R. 18-32).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 32).


## IV.    LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to

the Commissioner that he or she cannot engage in substantial gainful activity because of a

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of at least 12 months.  42

U.S.C. § 1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently
> engaged in substantial gainful activity.  If she is not, then the
> Commissioner considers in the second step whether the claimant has
> a "severe impairment" that significantly limits her physical or
> mental ability to perform basic work activities.  If the claimant
> suffers a severe impairment, the third inquiry is whether, based on
> the medical evidence, the impairment meets the criteria of the
> impairment listed in the "listing of impairments," . . . which result
> in a presumption of disability, or whether the claimant retains the
> capacity to work.  If the impairment does not meet the criteria for a
> listed impairment, then the Commissioner assesses in the fourth step
> whether, despite the severe impairment, the claimant has the

> residual functional capacity to perform her past work. If the
> claimant cannot perform her past work, then the final step is to
> determine whether there is other work in the national economy that
> the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520(a)(4). The

disability claimant bears the burden of establishing steps one through four. If the claimant is

determined to be unable to resume previous employment, the burden shifts to the Commissioner

at step five to establish that, given the claimant's age, education, work experience, and mental

and physical limitations, he is able to perform substantial gainful activities in jobs existing in the

national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is

bound by the factual findings of the Commissioner if they are supported by substantial evidence

and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a

reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118

(3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the

decision of the ALJ will not be overruled as long as there is substantial evidence to support it.

*Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal

issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).


## V.    DISCUSSION

In her request for review, Plaintiff raises two claims:

> (1)    The ALJ failed to properly evaluate the medical opinion
> from two treating providers, an FCE, and the State Agency
> – who all assessed disabling limitations – consistent with
> the SSA authority and Third Circuit precedent.

(2)    The ALJ's step 4 finding is contrary to law because he included no mental limitations in the RFC finding; more specifically, the ALJ failed to provide sufficient analysis to explain why such limitations were excluded.

(Pl.'s Br., ECF No. 6 at 2) (reordered).

### A.    Evaluation of Medical Opinions[3]

### 1.    The Parties' Positions

After setting forth the background law regarding the evaluation of medical opinions and summarizing those at issue here, Plaintiff observes that they include substantially greater and more detailed limitations than those in the RFC and thus meet her burden to produce evidence that she is "disabled" under the applicable regulations.  (*See* Pl.'s Br., ECF No. 6, at 9-12 (asserting, *inter alia*, that 82 Fed. Reg. 5844, 5869, 5871 "accentuates" the former regulation's "requirement that an ALJ must explain his decision in a way that permits meaningful review")).  Specifically, she underscores the work-preclusive nature of these sources' findings that she would be off-task 20 to 25 percent of the time and miss more than four workdays per month and that she cannot sit or sit/stand/walk more than four or six hours per eight-hour per workday, respectively.[4]  (*Id.* at 12-13 (citing R. 108, 691, 693, 696, 698, 723)).  She notes that no VE testimony exists that she could perform her PRW as a secretary while sitting only four hours per day, which shifts the burden to the ALJ at step five to show that she can perform other work based on her RFC and "vocational factors" such as age, education, and past work experience.

---

[3]  Plaintiff's first issue relates to Drs. Keah's Physical Medical Opinion and the Pain Questionnaire completed by her, Dr. Tingan's Physical Medical Opinion, Vari's FCE, and Dr. Henderson's administrative findings.  (R. 690-700, 722-43, 106-11).

[4]  Plaintiff points out that although the ALJ found Dr. Henderson's administrative findings partially persuasive, she rejected the work-preclusive sitting restriction contained therein.  (Pl.'s Br., ECF No. 6, at 15 (citing R. 30)).

(*Id.* at 13 (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 404.1566)).  However, Plaintiff further contends that the ALJ's sedentary work limitation coupled with her inability to do her prior job compels a step-five "disabled" finding under the grid rules.  (*Id.* (citing 20 C.F.R. § Part 404, Subpart P, Appendix 2, § 201.06)).  She adds that the ALJ's errors resulted in an RFC and subsequent hypothetical to the VE that omitted her established impairments, depriving the decision of vocational evidence and necessitating remand for a new RFC.  (*Id.* at 13-14).

Plaintiff continues that any determination by the ALJ that these opinions were inconsistent with or not supported by the evidence was unreasonable.  (*Id.* at 14).  She highlights imaging results showing advanced disc space narrowing and severe disc collapse at L5-S1, endplate sclerosis, hypertrophic spurring, multilevel disc bulges and bilateral foraminal narrowing/stenosis, a small annular tear at L4-L5, severe osteoarthritis of the right hip, bilateral knee osteoarthritis, and moderate degenerative changes in the left knee medial and patellofemoral compartments, as well as Dr. Sherif's conclusion that she required a right hip replacement.  (*Id.* (citing R. 352-54, 407, 467-68, 707-08, 783, 860-61, 863, 880)).  Additionally, Plaintiff cites physical examinations finding decreased range of motion in the lumbar spine, hips, and knees; pain and/or tenderness in the lumbar spine, knees and right lumbosacral spine, buttock, and hip; abnormal/antalgic gait; pain with movement in the lumbar spine and right hip; positive SLR test; and decreased right hip stability and right knee strength.  (*Id.* at 14-15, n.12 (citations omitted)).

Noting that an ALJ may not substitute his or her lay opinion for that of a medical professional, and denying that her argument requires her to show that other medical opinions of record were not persuasive, Plaintiff insists that the issue in this case is whether the ALJ's rejection of Dr. Henderson's sitting limitation and the aforementioned medical sources' opinions

was "reasonable and accurately and logically bridged to the record."  (*Id.* at 15).  She maintains that each of the grounds given by the ALJ for discounting these findings is "factually inaccurate and otherwise defective" as follows.  (*Id.*).  First, Plaintiff's "independent" gait was not a basis to reject the opinions where it was nonetheless "abnormal."  (*Id.*).  Second, the ALJ should not have found the opinions unpersuasive, in full or in part, on the basis of physical examinations failing to specify the degree of decreased range of motion and strength in the lumbar spine, right hip and right upper extremity because no minimum amount is required for the ALJ to find an opinion persuasive or ultimately determine that the claimant is disabled.  (*Id.* at 15-16, 18 n.14).  Third, the ALJ similarly found the opinions inconsistent with a positive SLR test because: even if the degree of motion triggering the result was not specified, the test was nonetheless abnormal; as with a limited range of motion, no specific degree is required for a positive finding; and in any event June 2022 examination notes specifically stated that the test was positive at 50 degrees of hip flexion.  (*Id.* at 16 (citing R. 787)).

Fourth, the ALJ should not have found the off-task and absenteeism limitations assigned by Drs. Keah and Tingan unpersuasive due to Plaintiff's acute complaints and scheduled visits where such limitations were not based on these factors but on her symptoms and impairments.  (*Id.* (citing R. 29, 693, 698)).  Fifth, the ALJ did not explain how these doctors' restrictions regarding the need for an assistive device and leg elevations were inconsistent with the record, which included multiple physical examinations confirming an antalgic gait and numerous problems with the lower extremities.  (*Id.* at 15-16).  Sixth, insofar as Drs. Keah's and Tingan's opinions were based on Plaintiff's subjective complaints, as the ALJ suggested, a patient's description of her symptoms is naturally considered by a treating medical provider, and no indication exists in either the opinions or the ALJ's decision that these complaints were not

filtered through the physicians' own expertise.  (*Id.* at 17).  On the contrary, Drs. Keah and

Tingan considered not only the longitudinal consistency of her complaints but also their

consistency with clinical and laboratory findings (including imaging of her lumbar spine and

right hip), her response to treatment, and other medical providers' reports.  (*Id.* (citing R. 690,

693-95, 698)).  Although the ALJ indicated that he also considered Plaintiff's imaging results,

she further contends that he failed to explain how the substantial abnormalities reflected therein

and detailed above were inconsistent with Drs. Keah's and Tingan's opinions.  (*Id.* at 17-18 &

n.13).

      Plaintiff concludes with the observation that if the ALJ had questions about Plaintiff's

impairments or symptoms or the consistency of the medical opinions at issue with the record

evidence he had options other than to set his own opinion against those of four medical sources,

such as contacting one or more of them for clarification, seeking an updated consultative

examination, enlisting a medical expert to review the record, or returning the updated record to

the State agency for review by a medical consultant at that level.  (*Id.* at 18-19 (citing 20 C.F.R.

§§ 404.1519, 404.1520b(b)(2); SSR 12-2p; HALLEX § I-2-5-34)).  She points out that an ALJ is

not permitted to substitute his lay analysis for medical expertise and that when such an error

occurs the reviewing court is required to remand the matter for further proceedings rather than

endeavor to reweigh the evidence or attempt to fill in the missing factual or legal analysis.  (*Id.* at

19 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Fargnoli v. Massanari*, 247 F.3d

34, 44 n.7 (3d Cir. 2001))).

      The Commissioner responds that Plaintiff's citation to the Federal Register is misplaced

because even after promulgating the new regulations, the SSA continued to stress that judicial

review of an ALJ's findings must comport with the highly deferential "substantial evidence

standard of review" rather than focus on the ALJ's source-level articulation of the weight given

to any specific medical opinion.  (Resp., ECF No. 7, at 12 (citing 81 Fed. Reg. at 62,572 n.109;

82 Fed. Reg. at 5853)).  She notes that although the Third Circuit has not directly addressed the

requirement under the new regulations for "source-level articulation" it previously endorsed the

"reasonable articulation standard" that they were intended to augment.  (*Id.* at 12-13 (citing

*Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014); *Alley v. Kijakazi*, No.

CV 21-1161, 2022 WL 14005134, at *1 n.2 (W.D. Pa. Oct. 24, 2022))).  She maintains that this

latter standard requires only that the ALJ's decision provides the court with no basis to believe

that the RFC does not incorporate all Plaintiff's limitations.  (*Id.* at 13 (citing *Lambert v.

Kijakazi*, No. 19-35360, 2022 WL 1537359, at *1 (9th Cir. May 16, 2022); *Tammi F. v. Saul*,

2020 WL 7022426, at *6 (D. Kan. Dec. 4, 2020) (additional citation omitted))).  Thus, she

rejects any contention by Plaintiff that the new regulations bolster the ALJ's responsibility to

provide "elaborate explanations" when considering medical opinions.  (*Id.*).

Furthermore, the Commissioner maintains that the "disability form reports" submitted by

Plaintiff are based merely on diagnoses and her subjective statements and are therefore not

persuasive and do not take away from the substantial evidence supporting the ALJ's

determination.  (*Id.* at 14).  She notes that in one progress note Dr. Keah wrote that a "form [was]

for [Plaintiff] to complete" and in Vari's FCE he recorded that his assessments recited Plaintiff's

complaints and were "in accord" with them, as well as how she presented to him.  (*Id.* (citing R.

88, 724-43)).  She also highlights that the opinions do not address Plaintiff's refusal to undergo

recommended treatment for her hip – her "primary" source of impairment according to

Plaintiff's treating specialists – which renders it "not disabling" under the Social Security Act.

(*Id.* at 14-15 (citing R. 82, 86-87, 382, 385, 394, 432, 444, 447, 455, 461, 568-69, 588, 702, 772,

777; *Dearth v. Barnhart*, 34 F. App'x 874, 875 (3d Cir. 2002); *Sias v. Sec'y of HHS*, 861 F.2d 475, 477 (6th Cir. 1988))).  Additionally, the Commissioner observes that the work excuses furnished by Plaintiff's treatment providers repeatedly stated that she was not "permanently" disabled.  (*Id.* (noting that work excuses reflected that Plaintiff could perform 84.8% of job demands and had "a 64% disability")).

In closing, the Commissioner submits that substantial evidence supports the ALJ's assessment of the medical opinion evidence, which she posits was arrived at based on the applicable regulations and evidence that belied Plaintiff's alleged impairments.  (*Id.* at 15).  She acknowledges that Plaintiff has some limitations from normal age-related musculoskeletal degeneration but insists that she is nonetheless not disabled.  (*Id.* (citing *Davis v. Massanari*, No. IP00-1444-C-H/G, 2001 WL 1175093, at *2 (S.D. Ind. Sept. 6, 2001))).  She further notes that it is well-settled that a claimant need not be pain-free to be found not disabled.  (*Id.* (citing *Andreolli v. Comm'r Soc. Sec.*, No. 07-1632, 2008 WL 5210682, at *4 (W.D. Pa. Dec. 11, 2008))).  Lastly, she asks the Court to decline Plaintiff's invitation to reweigh the evidence, observing that the ALJ's decision should not be disturbed simply because there exists substantial evidence that would support a contrary decision.[5]  (*Id.* (citations omitted)).

### 2.    Analysis

The Commissioner modified Social Security's regulations in 2017, changing the way ALJs evaluate medical evidence.  The prior regulations, governing claims filed before March 27, 2017, divided medical sources into three categories: treating, examining, and non-examining. *See* 20 C.F.R. § 404.1527(c).  ALJs were to weigh each medical opinion and could sometimes

---

[5]  Although Plaintiff filed a reply, it addresses only the other issued raised by her in her opening brief.  She agrees that the instant issue "is fully briefed and ready for the Court's consideration."

afford controlling weight to opinions from treating sources. *See id.*

Under the new regulations, ALJs do not place medical sources into these categories and can no longer afford controlling weight to any opinion. *See id.* § 404.1520c(c). Instead, ALJs now evaluate the persuasiveness of each medical opinion and each prior administrative medical finding. *See id.* Five factors determine persuasiveness: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, purpose, and extent of the treatment relationship, as well as frequency of examinations and whether the medical source examined the claimant firsthand; (4) specialization; and (5) other factors, like "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *See id.* Supportability and consistency are the most important factors. *Id.* § 404.1520c(b)(2). ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency. *Id.*

It is well established that an ALJ is free to reject a medical source opinion but in so doing must indicate why evidence was rejected so that a reviewing court can determine whether "significant probative evidence was not credited or simply ignored." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). The must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections" but need not discuss "every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004); *Burnett*, 220 F.3d at 122. Accordingly, "[t]he ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for [her] conclusion sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Burnett*, 220 F.3d at 120).

Here, the ALJ gave the following grounds for discounting the medical opinions at issue:

21

Plaintiff's "abnormal but independent gait" (Keah, Henderson, Vari); the failure to specify the degree of decreased strength in the right hip or range of motion in the lumbar spine and right hip (Keah, Tingan, Henderson, Vari), the degree of motion triggering a positive SLR test (Keah, Henderson, Vari), or the degree of decreased right elbow range of motion (Keah); the lack of medical observations, prescriptions or recommendations supporting the use of an assistive device or frequent leg elevation (Keah, Tingan); the infrequency of Plaintiff's acute complaints and scheduled visits with the medical provider (Keah, Tingan); and unremarkable consultative examination findings (Henderson, Vari). (R. 29-30). The Commissioner maintains that the ALJ's consideration of these opinions meets the reasonable articulation standard and that no greater "source-level articulation" is required. (Resp., ECF No. 7, at 12-13). Source-level articulation permits an ALJ to set forth his or her consideration of all opinions provided by the same medical source "in a single analysis" using the five persuasiveness factors listed above even where the source has provided multiple opinions, given that it is often infeasible in light of the amount and array of evidence in the record for ALJs to address each one individually. *See* 20 C.F.R. § 1520c(b)(1) (cross-referencing *id.* § 1520c(c)(1)-(5)). However, Plaintiff's argument is not that the Commissioner failed to separately address each opinion offered by the aforementioned medical sources. It is that the bases offered by the ALJ for finding Drs. Keah's and Tingan's and Vari's opinions unpersuasive and for rejecting the sitting limitation determined by Dr. Henderson were unreasonable. (Pl.'s Br., ECF No. 6, at 15-18).

The Commissioner makes no attempt to substantively defend the reasonableness of the ALJ's analysis, perhaps because of the difficulty in doing so. (*See* Resp., ECF No. 6). For instance, the ALJ identified multiple purported issues with the opinions revolving around the originating sources' failure to specify the degree of decreased strength or range of motion in the

lumbar spine, right hip and right elbow or the degree of motion required to trigger a positive SLR

test. (R. 29-30). However, the ALJ never contacted any of the relevant medical sources,

requested additional existing records or asked Plaintiff for more information before making a

determination as authorized by SSR 12-2p and instead simply assumed that the underlying

clinical findings were insufficient to support the proffered opinions.[6] (*See* SSR 12-2p at III.C.1

(stating that if the evidence is insufficient to determine whether the claimant is disabled the

determination may only be made after "efforts to obtain additional evidence")). Furthermore,

although Plaintiff's independent but antalgic gait *may* have warranted rejecting any purported

need for an assistive device, it is unclear how it would justify rejecting the sitting restriction

identified by Dr. Henderson or the opinions of Dr. Keah and Vari completely. As Plaintiff notes,

an antalgic gait, much like a positive SLR, is not a normal finding. (Pl.'s Br., ECF No. 6, at 6-7).

The ALJ gave additional reasons for his conclusions regarding the opinions at issue. (*See*

R. 29-30 (citing as other grounds for discounting these opinions, *inter alia*, the relative

infrequency of Plaintiff's visits to Drs. Keah and Tingan and the unremarkable consultative

examination findings)). However, whatever the merits of these other grounds, the ALJ's reliance

on numerous unsupported bases calls into question his entire treatment of the opinions and

requires remand. In other words, this case is not one in which the Court can say with any degree

of confidence that the errors committed by the ALJ were harmless because the same result would

have obtained based upon his invocation of other, valid reasons for excluding from the RFC

---

[6] The ALJ's assumption is particularly suspect given the positive SLR test at 50 degrees
hip flexion conducted by Dr. Tingan, whose opinion he discounted on other grounds but not
based on the results of the test. (R. 787). The ALJ apparently accepted that the test results
supported the restrictions identified by Dr. Tingan, yet when evaluating the similar opinions of
the other medical sources, he tacitly assumed otherwise: that whatever the results of the other
underlying positive SLR tests were, those results did not support the opinions that relied on
them. The ALJ did not explain the basis for this assumption.

limitations determined by Drs. Keah, Tingan, and Henderson and Vari.  *Cf. Alexander v. Saul*, 817 F. App'x 401, 404 (9th Cir. 2020) (rejection of a single medical source's opinions due to a factual error "was harmless because the ALJ's decision was based on other specific and legitimate reasons that are supported by substantial evidence in the record") (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)); *Whitten v. Soc. Sec. Admin, Comm'r*, 778 F. App'x 791, 796 (11th Cir. 2019) (per curiam) (erroneously discounting physician's opinion over a purported failure to mention relevant information "was harmless because the ALJ gave other reasons—all supported by substantial evidence—for discounting [it]") (citation omitted).

The Commissioner insists that the substantial evidence standard requires only that the ALJ's decision gives the Court "no reason to think the RFC does not reflect all of Plaintiff's impairments."  (Resp., ECF No. 7, at 13) (quotations and citations omitted).  But the ALJ's discrediting of the limitations determined by these medical sources based in significant part upon unsubstantiated grounds does exactly that, necessitating remand.  She adds that the applicable standard also does not require "elaborate explanations in considering a claimant's submitted disability opinions . . . ."  (*Id.*).  Nonetheless, the problem with the ALJ's decision is not its lack of explanation.  It is that a considerable portion of the explanation provided does not find support in the record.  *See Burnett*, 220 F.3d at 118 (substantial evidence standard requires "such relevant evidence as a reasonable mind might accept as adequate").

The Commissioner continues that Plaintiff's "disability form reports"[7] are not persuasive, particularly where they are supposedly based solely on Plaintiff's diagnoses and subjective

---

[7]  The Commissioner does not specify to which opinions she refers, but presumably it is those of Vari and Drs. Keah and Tingan.  Dr. Henderson's administrative findings were set forth on the form used by the State agency.  (R. 106-11).

statements. (Resp., ECF No. 7, at 14). To begin, the ALJ never cited these opinions' formats as a reason to discount them, and thus the proffered reason constitutes nothing more than an impermissible *post-hoc* justification for the ALJ's decision. *See, e.g., Schuster v. Astrue*, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision."). Moreover, although check-the-box forms with no narrative explanation constitute "weak evidence at best," *Mason v. Shalala*, 944 F.2d 1058, 1065 (3d Cir. 1993) (citation omitted), it is difficult to classify these opinions as such. Both Drs. Keah and Tingan identified the clinical signs and laboratory findings underlying their opinions and Plaintiff's response to various treatments, and the former also described the nature, location, frequency, precipitating causes and severity of her pain. (R. 690-700). Vari, in particular, completed a 20-page FCE detailing Plaintiff's physical abilities and task capacity and the results of various tests. (R. 724-43, 891-910).

Furthermore, the Commissioner maintains that Dr. Keah's and Vari's opinions are also unpersuasive because Dr. Keah wrote in a January 2023 progress note that a "form [was] for [Plaintiff] to complete" and because Vari's FCE was "in accord" with her presentation and subjective complaints and described impermanent or less-than-complete disability, (Resp., ECF No. 7, at 14), but these arguments find no greater traction (not least because they, too, were not cited by the ALJ in his decision). It is unclear to what "form" Dr. Keah refers in the progress note, but it does not appear to be any of her record opinions, which all date to 2022 and were indisputably completed by her, not Plaintiff. (R. 690-694, 722-23, 889-90). Additionally, the fact that Vari's FCE accorded with Plaintiff's subjective complaints is hardly a basis to reject it or assume that it flowed solely from the complaints. On the contrary, the FCE was consistent with how Plaintiff presented to Vari, as the Commissioner acknowledges, (Resp., ECF No. 7, at

14 (citing R. 723-43)), and he also conducted substantial physical testing of Plaintiff over two days.  (R. 724-43).  As for Vari's finding that Plaintiff was able to perform many or even most of the functions of her PRW,[8] it would also not serve as a basis for wholesale rejection of his opinion: the Commissioner fails to identify any authority for the legal tenet that an ALJ may discredit a medical source's opinion simply because the source does not find the claimant completely unable to carry out any prior job duties.[9]

Nor are the remaining arguments of the Commissioner persuasive.  She complains of Petitioner's "noncompliance with medical advice to treat her degenerative hip," (Resp., ECF No. 7, at 14-15), but the ALJ did not cite this as a basis for discrediting any of the opinions at issue. *See Schuster*, 879 F. Supp. 2d at 466.  She dismisses Plaintiff's impairments as "common" and "age-related" and declares that "she is not an individual whom Congress contemplated should be considered disabled," (Resp., ECF No. 7, at 15), however, whether or not Plaintiff is disabled is not the Commissioner's call but an issue reserved to the ALJ on remand.  Finally, she submits that a claimant should not be found not disabled simply because she is symptomatic or because

---

[8]  It bears noting that although Vari purported to calculate that Plaintiff could perform 84.8 percent of her prior responsibilities, he further opined that she could only sit for one-third of an eight-hour workday.  (R. 726).  As Plaintiff notes, such a limitation, if accepted by the ALJ, would preclude even sedentary work.  (Pl.'s Br., ECF No. 6, at 13 n.10).

[9]  The related notion that Plaintiff was not "permanently" disabled appears to stem not from the FCE but from other records cited by the Commissioner, primarily AFLAC "Continuing Disability Claim Forms" completed and executed by Plaintiff (and in one instance by Dr. Tingan) in which she checked a box indicating that she did not believe she was permanently disabled.  (R. 502-10).  However, determining whether or not a claimant has a disability and, if so, its expected duration are issues reserved to the ALJ, who must make this determination in accordance with the five-step process set forth in the regulations.  *See Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)).  As such, others' statements regarding these ultimate issues are "inherently neither valuable nor persuasive."  20 C.F.R. § 404.1520b(c)(3)(i).

other substantial evidence could support such a conclusion.  (*Id.*).  But the Court is not remanding for further consideration for either of these reasons.  Instead, remand is required because the ALJ cited multiple reasons for discrediting the opinions Drs. Keah, Tingan, and Henderson and Vari that were unsupported by substantial evidence.

> **B.      Return to Prior Relevant Work**

In addition, Plaintiff argues that the ALJ erroneously determined at step four that she could return to her PRW as a school secretary because the ALJ failed to include any of her mental limitations in the RFC.  (Pl.'s Br., ECF No. 6, at 4-8).  Because I remand this matter for further consideration of the aforementioned medical opinions, which may in turn affect the ALJ's determination that Plaintiff can perform her PRW, I do not address Plaintiff's argument on this issue.  *See Steininger v. Barnhart*, No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. Aug, 24, 2005) (not addressing additional arguments because the ALJ may reverse his findings after remand).  It is possible that, on remand, the ALJ may reach different conclusions as to Plaintiff's ability to perform PRW, thus obviating the need for consideration of this issue.

**VI.     CONCLUSION**

For the reasons set forth above, Plaintiff's request for review is granted, and the matter is remanded for further proceedings consistent with this memorandum.

                              BY THE COURT:


                               /s/ Lynne A. Sitarski
                              LYNNE A. SITARSKI
                              United States Magistrate Judge